THOMAS R. CRAFT v. ROBERT GERMANY et al.

1. DEED: CONSTRUCTION OF.—Where an estate is purchased by a guardian for his ward, under an order of the Court of Probates, if the deed be ambiguous as to the quantity of the estate conveyed, the order of the court, under which the purchase was made, if incorporated in the deed, may be resorted to for the purpose of arriving at the true intention of the parties.

2. SAME.—A deed, conveying land and personal estate, was executed by C. to L., a minor; the deed recited in the premises, that it was executed in pursuance of a purchase made by L.'s guardian, under an order of the Court of Probates, authorizing him to purchase for his ward all the interest, or supposed interest, of C. in the estate of his deceased wife; in the granting part, the deed conveyed all the interest of C. in the estate of his wife which he acquired by virtue of his marriage with her, and the deed then concluded as follows: "To have and to hold all the above described and granted estate unto L., his heirs, &c., to all intents and purposes in law as fully and effectually as I am capable of selling and conveying away all my interest in the said real and personal estate." Held, that the deed conveyed not only the interest acquired by C., by virtue of his marriage, but all his interest, of whatever character, in the estate of his wife, including a legacy left him by her will.

APPEAL from the Court of Probates of Amite county. Hon. R. M. Neilson, judge.

The appellant filed his petition in the court below, against the appellees, to recover from them, as executors of the last will and testament of Elizabeth Craft, his deceased wife, one-half of her personal estate, which he alleged was of the value of $90,000, and which had been bequeathed to him by her last will and testament.

The appellees resisted his claim upon the ground that the petitioner had sold his interest in the estate to one of them, as guardian for John W. Laud, who was a son of a former marriage of Mrs. Craft, and upon the further ground that they had made a final settlement, of which petitioner was duly notified, and that he had never claimed or demanded, after the said sale and purchase, any interest in said estate, and that accordingly the guardian of said Laud had inventoried the same as a part of his estate.

It appeared that in 1853 Elizabeth Craft had died, after publishing her last will and testament, by which she devised one-half of her estate to petitioner, and the other half to her son, John W. Laud ; that the will was duly probated, and the defendants qualified as her executors. It also appeared that a final settlement had been made, and the whole of the estate had been inventoried as, the property of John W. Laud.

It also appeared that the Court of Probates, upon the petition of Germany, one of the executors, and also guardian for said Laud, authorized said Germany to purchase the interest of petitioner in the estate of Elizabeth Craft. This order is incorporated in the deed afterwards executed by petitioner to Laud, and is in the following words and figures :—

" Whereas, at a regular term of the Probate Court of Amite county, in the State of Mississippi, held on the second Monday of September, A. D. 1855, it was, among other things, decreed, that Robert Germany, guardian of the person and estate of John W. Laud, a minor, &c., should purchase for the use and benefit of said John W. Laud, the plantation situated in said State and county, and known as the Nathan Laud plantation, together with such interest, or supposed interest, as Thomas R. Craft, of said county and State, may have to the personal estate of the said Elizabeth R. Craft, deceased. Now, therefore, this deed of conveyance, made the 10th day of November, A. D. 1855, between the said Thomas R. Craft, of the county, &c., of the one part, and John W. Laud, of the other, witnesseth : that the said Thomas R. Craft, for and in consideration of the sum of ten thousand dollars, paid, &c., the receipt of which is hereby acknowledged, and I, the said Thomas R. Craft, do by these presents grant, bargain, sell, and convey, and have granted, bargained, sold, and conveyed unto said John W. Laud and

his heirs, &c., forever, all my right, title, interest, claim, and demand, present or future, either at law or in equity, or pretended claim, in and to the real estate of my deceased wife, Elizabeth R. Craft, known as the Nathan Laud plantation.   (Here follows a description of the land.)   Also all such interest, or supposed interest, as I, the said Thomas R. Craft, may have or claim in and to the personal estate of the said Elizabeth R. Craft, either at law or in equity, present or future, which I, the said Thomas R. Craft, may have acquired by virtue of my intermarriage with the said Elizabeth R., formerly Elizabeth Laud, the widow and relict of the said Nathan Laud, deceased.

" To have and to hold the above granted, bargained, and described premises, lands, and tenements and personal estate, unto him, the said John W. Laud, his heirs and assigns, to all intents and purposes in the law, as fully and effectually as I am capable of selling and conveying away all of my interest in and to said above described real and personal estate, to the said John W. Laud, his heirs and assigns, forever.   In testimony," &c.

The court dismissed the petition, and the petitioner appealed.

*D. W. Hurst*, for appellant.

The executors admit the fact of the existence of the will of Mrs. Craft, and the probate of the same, and that they have undertaken to carry it into effect.   This they will be required to do, unless the will should be set aside upon a proper proceeding for that purpose. (See *Wall* v. *Wall*, not reported.)   While these admissions are made, upon which, without further statement, a decree would have been made in favor of Craft, the executors set up a deed from Craft to Laud, which deed, it is insisted by them, will prevent Craft from succeeding.   This construction of the deed is the only question in the cause of any moment whatever.   The deed conveys all the title (more or less) that Craft had in the real estate (and we are not informed by the record whether he was a tenant by the curtesy or not), and also all such interest, or supposed interest, as he, the said Craft, may have or claim in and to the personal estate of Elizabeth Craft, deceased, either at law or in equity, present or in future, which he the said Craft may have acquired by virtue of his intermarriage with the said Elizabeth R. Craft.   This is the granting

part of the deed, and the estate granted is an interest, or supposed interest, which Craft may have acquired by virtue of his intermarriage.

This interest, which Craft is seeking to recover, is an interest that he claims under the will of Mrs. Craft. If the two interests be the same, the decision against Craft was right; if they be different, the decision was wrong. All we desire to say in reference to the two interests being different, is, that in the one case the interest vests, upon the marriage, by operation of law; in the other, by the will of the party, to take effect at their death. Craft conveyed such interest, or supposed interest, as he acquired by virtue of his intermarriage with the testatrix, Mrs. Craft; the granting part of the deed shows this beyond all doubt. If so, does the recital change or enlarge the grant, so as to convey a greater interest than the interest granted? The recital in the deed is, that Germany's guardian should purchase such interest, or supposed interest, as Craft may have in and to the personal estate of Elizabeth Laud. The granting part of the deed is, that Craft conveyed whatever interest he acquired by virtue of his intermarriage. Thus, where there is doubt as to the amount of interest conveyed by the deed, the recital may be resorted to to assist in a proper interpretation. But where the language of the deed is clear and explicit, and there is no doubt as to the meaning of the grantor, recitals are never allowed to contract or enlarge the grant.

" This is a well-settled rule of construction, and there never was a case in which a recital controlled the plain words of a granting part of a deed." See *Huntington* v. *Havens*, 5 Johnston Ch. Cases, 22. I am not, however, apprised that it has ever been held that a construction can be put upon a contract, directly contradicting all of its express stipulations. See Opinion, Judge Green, 3d Randolph, 487.

" It is a general and a reasonable rule, that mere general words, in an instrument, shall be restrained by other expressions more limited in the same instrument." 9 Mass. 228, 229.

" In the construction of a contract, where the language is ambiguous, courts uniformly endeavor to ascertain the intention of the parties, and to give effect to that intention. But, where the language is unequivocal, although the parties may have failed

(which is not pretended in this case) to express their real intentions, there is no room for construction, and the legal effect of the agreement must be enforced." 4 Gilman, 544.

"There is no principle of construction better settled, or which more commends itself to good sense, than that general words, in a contract, will be explained and controlled by more specific and particular words in the same instrument, and regarding the same subject-matter." 15 Vermont, 519.

"When the words, in the operative part of a deed of grant are clear and unambiguous, they cannot be controlled by the recitals; but recitals, and all other parts of the deed, must be regarded, in order to fix the true meaning of the operative part." Addison on Contracts, American notes and authorities cited, 845.

"In construing an agreement, however, it must be borne in mind, first, that it is not enough for a party to make a possible intention favorable to his view, but he must show a reasonable certainty that the intention was such as he suggests; and, secondly, all latitude of construction must submit to this restriction—that the words and language of the instrument will bear the sense sought to be put upon them; for the court cannot put words in a deed which are not there, or put a construction on the words of a deed directly contrary to the plain sense of them." Chitty on Contracts, 81. From the above authorities we conclude, that the recital in the deed can have no effect whatever to enlarge the grant.

We propose to examine the only remaining question; that is, whether the grant has been enlarged by the habendum? The deed provides that young Laud is to have and to hold the above granted and described premises, lands, tenements, and personal estate, unto him, the said John W. Laud, his heirs and assigns, to all intents and purposes in the law, as fully and effectually as the said Craft is capable of selling and conveying all his interest in and to *the said above-described real and personal estate.* It will be noted here that the above-described personal estate is that which was acquired by virtue of the marriage. We, therefore, insist that the habendum in the deed does not enlarge the estate first granted. See 4 Kent, 520; *Jackson* v. *Stevens,* 16 Johns. 109; Story on Contracts, 568, 569, sections 642, 643, 644, and authorities cited.

If we are right in the views that we have presented relative to

the proper construction of the deed, it is clear, then, that Craft is not estopped by it. Nor can it be urged against him that he acquiesced in the final settlement, for it appears that he was, at the time of the final settlement, a non-resident of the State, and filed his petition for distribution within three months after the settlement had been made. And, if the executors gave the deed a wrong construction, it was no fault of Craft's. And if the guardian, Germany, did inventory Craft's property as that of young Laud, that cannot divest Craft of his title, or invest the other with title. To say the least of the conduct of these defendants, it does appear strange that they should insist that, for the sum of ten thousand dollars, they had purchased Craft's interest in a large plantation, and his undivided half interest in ninety thousand dollars worth of personal property, when the deed for the real estate conveys his interest in the same, and for the personal property such interest as he may have acquired by virtue of his intermarriage.

*H. F. Simrall,* on same side,

Cited 1 Black. Com. 298; 4 Kent, 520; *Jackson* v. *Stephens,* 11 John. R. 114.

*H.* and *W. S. Cassedy,* for appellees.

The petitioner, Craft, claims distribution of the estate of his wife, under her will, as a legatee. The executors set up in their answer, a deed of Craft to John W. Laud, a minor, of whom Germany is guardian, which, for the consideration of ten thousand dollars, conveys all the right, title, and interest of Craft in the estate of his wife Elizabeth, to John W. Laud, as a cause why distribution should not be decreed.

The only question in the case is as to the effect of this deed. The construction insisted on by the appellant, Craft, is, that the deed only conveys his interest in the wife's personal estate, accruing to him by virtue of the marriage, and not what he takes under the will. The appellees claim that the deed includes the entire interest of Craft in the estate, real and personal, of his wife, and, therefore, divests him of all rights in her estate under the will or otherwise. It is, then, a question of construction of the deed, which the court has to decide. In construing deeds, the intent of the

parties is to be first sought; for the intent, and not the words, is the essence of every agreement. *Jackson* v. *Myers*, 3 Johns. R. 395.

The intent, or main object of a deed, is to be gathered from its provisions, and it will depend upon the deed itself which is its main object; when that is ascertained it must prevail. 7 Smedes & Marshall, 495, 496.

The construction is to be made on the entire deed. Every part ought, if possible, to take effect; and, if certainty once appears in a deed, that must be referred to as explanatory of what is indefinite. Cruise on Real Prop., title Deed, 293; 7 S. & M. 496.

The intention, then, of the parties being the standard and guide in construing deeds, the first thing to be determined is the intention of these parties. For this purpose, the recital is not only useful, but, in this case, furnishes the key to the motives and intentions of these parties.

Germany, as guardian of John W. Laud, was about to purchase from Craft, for his ward, *something* for which he was to give ten thousand dollars of his ward's money, and, consequently, required authority from the Probate Court to make the purchase. This authority was obtained in the form of an order of the Probate Court, which order is recited in the deed, and clearly explains the intention of Germany by the language employed in said order. The language is, that Germany, as guardian, should purchase for his ward, J. W. Laud, "the plantation, situate in said State and county, known as the Nathan Laud plantation, *together with such interest*, or supposed interest, as Thomas R. Craft, of said county and State, may have, *in and to the personal estate of the said Elizabeth Craft*."

Now, this recital shows clearly, that Germany had authority to buy only the interest of Thomas R. Craft, or the supposed interest in the *personal estate* of Elizabeth Craft, *generally*, without restriction as to the mode that such interest may have accrued to Thomas R. Craft; *all of his interest*, real or supposed; not any *special* or *particular* interest. This authority to Germany to buy, being by Craft recited in his deed, shows that he was well advised of Germany's intention as to the extent of the purchase *he*, Germany, thought he was making. To suppose that Craft (knowing this, and

reciting it in his deed) intended to convey less than Germany was authorized to buy, is to suppose him intending a fraud upon Germany; and fraud is never presumed. The only inference which can be drawn as to Craft's intention by this recital, consistent with honest fair dealing in him, is that he intended to convey what Germany was authorized to buy, to wit, Craft's entire interest in the estate, real and personal, left by his wife. This intention is still further manifest in the conveyance of the interest of Craft in the land of his wife. The conveyance is of " all of his right, title, claim, demand, present or future, either at law or in equity, or pretended claim, in and to the real estate of my deceased wife, Elizabeth Craft." Here there is no restriction as to any particular estate, or any prescribed mode that such estate accrued to him, other than the general description of. his interest in the lands of his wife. This intent is still kept up when he comes to convey his interest in the personal estate down to the words, " acquired by virtue of my marriage." Before these words, it is as in the conveyance of the land, " all such interest or supposed interest he has or claims in the *personal estate*, either at law or equity, present or future." Every interest is completely conveyed, however accruing, before the words with reference to the marriage occur, and they seem to be intended to still further enlarge the description of his interest, so as to include every possible interest, instead of being intended as a limitation upon any previous general terms used to describe what was conveyed. The insertion of the word " or" between " future" and " which" would leave no room for controversy. And this is wholly admissible, where every other part of the deed manifests so strongly the intention of the parties, as being consonant with the meaning of that expression, with the insertion of the word " or," when without it this single expression is repugnant to every other part of the deed. That it is so repugnant with all *previous* parts of the deed has already been shown. That it is repugnant to what follows needs only the attention of the court to the last clause of the deed to convince : " To have and to hold the above granted, &c., lands and personal estate to said John W. Laud, to all intents and purposes in law, as fully and effectually as I am capable of *selling* and *conveying* away ALL MY INTEREST in and to the said above described real and personal estate," &c. Now, here

is a full, broad, and definite description of what Craft was selling and what Laud was to hold: all the interest of Craft, not simply that which "accrued by virtue of the marriage," but all his interest, in what? Why in the personal estate of Elizabeth Craft, deceased, described as being all "either in law or equity, present or future," and that, too, of *all his* interest in her personal estate, as fully and effectually as he was capable of selling and conveying. He was certainly capable of selling the interest which he had under the will in Mrs. Craft's estate or otherwise, and this is the only limit he places on the extent of his conveyance, to wit, all he was capable of conveying.

It must, therefore, be apparent to the court that there is a harmony, as to the intention of the parties, running throughout this whole deed, in the recital, premises, and habendum. They singly and in combination, show that the main object of the deed and the intention of the parties were to convey all of the interest of Craft, of whatever character, in the estate, real and personal, of his wife, to John W. Laud. This Germany bought, this Craft sold, and intended to convey. The only words contained in the entire instrument which can be, by any ingenuity, claimed to express a different intent, or a meaning repugnant to all else contained in the deed, is the clause following, to wit : "which I, the said Thomas R. Craft, may have acquired by virtue of my intermarriage with the said Elizabeth R. Craft."

Now, admitting this conflict, which is to prevail? And what is the rule? The rule is, when there are words in a deed that evidently appear repugnant to the other parts of it, and to the general intention of the parties, *they* will be rejected. Cruise on Real Prop., title Deed, 296 ; and *Williams* v. *Claiborne*, 7 S. and M. 496. Then, by virtue of this rule, reject the words by "virtue of the marriage," &c., and the case is at once disposed of. The deed conveys all Craft's interest in the personal estate of his wife, and he has no claims to assert in the Probate Court.

But retaining that clause in the deed, and what does it amount to? It is simply an additional description of the estate conveyed, and not a limitation of the estate, as is contended for. An expression in explanation, and not in restriction, of the estate conveyed. If it was intended as a limitation of the grant, then it is the deed ;

it contains the estate conveyed, and yet it occurs for the first time in the deed, and conveys an estate Germany was not authorized to buy, that Craft nowhere else purports to sell or convey, and which presents the strange anomaly of being no estate at all, as abundantly appears from the deed and all the facts set forth in the pleadings. It appears that Mrs. Craft died after 1846, to wit, in 1855, leaving issue one child, by her previous marriage with Nathan Laud, and no child or children by Craft. That she had disposed by will of all of her estate. Then nothing accrued by virtue of the marriage to Craft. He had an interest, however, under the will of his wife, and being uncertain of the extent of his interest, and being supposed unacquainted with the force of technical terms or the origin of his legal rights, and being about to sell all of his interest in a certain estate, he used these terms as words of description (in addition to others), broad enough (not correctly, it is true) to embrace every kind of right or interest he might have in that estate.

And is it not passing strange, that words of description of an estate, erroneously applied, not true in themselves, used by one not supposed to be acquainted with the legal signification of technical terms, should yet be held to defeat the estate which he had, and which was intended to be conveyed (and was conveyed, as we contend), to the exclusion of every other part of the deed, and with the effect of defeating Laud of his ten thousand dollars, and vesting him with the naked legal rights of Craft to an estate having no existence whatever? This seems so violent an attack on common sense and common honesty, that law will hardly be found to aid it, or render it effectual. Especially when the law has been, from time immemorial, that "the chief intent of the parties is *to pass* the estate, and *the method* of doing it ought to be subservient to that end; and though the intent of the grantor is to be regarded *as to what estate* is to pass, *and to whom*, yet it is not to be regarded as to the *manner* of passing it, for of that he is supposed to be ignorant. And it is an established rule, that a deed shall never be laid aside as void, if by any construction it can be made good." *Chester* v. *Willan*, Saunders R. 96, letter b, note 1st.

Judges of late years have had greater consideration for *passing* the estate which is the *substance* of the deed, than the *manner*

how, which is the *shadow*.    Ib. 97, letter a, end of note.    If the construction contended for by appellants prevail, then the shadow will have more consideration than the substance, and a very shadowy estate will have passed to Laud.    It is evident, from the words themselves, that they are merely descriptive of the estate, or so intended, in addition to the words already used.    They show how he acquired the estate already conveyed, and are no more a restriction than if he had said, " acquired by virtue of a deed from A," if no such deed existed.    The estate conveyed was already sufficiently described by the words, " all such interest or supposed interest which I have, or may claim, in and to the personal estate of the said Elizabeth R. Craft, either at law or in equity, present or future."    And the rule is, that if the thing described is sufficiently ascertained, it is sufficient, though all the particulars are not true ; as if a man conveys his house in D., which was R. Cotton's, when it was Thos. Cotton's.    4 Comyn's Digest, title Fait (E. 3), page 165.

So, if he demise the tithes of seventy-eight acres, &c., *all which were in lease to M.*, the tithes pass, though not in lease ; for there was sufficient certainty before, and therefore the words, all which, shall be taken as an explanation, and not as a restriction.    4 Comyn, Ibid. ; *McRaven* v. *McGure*, 9 Smedes & Marshall, 51 ; *Jackson* v. *Clarke*, 7 Johnson's R. 217.

With this construction the deed can be sustained and held good to pass the estate intended by the parties ; with the construction contended for by the appellants, the deed will be void, as nothing passes thereby.    And in this construction the court will be sustained by another principle of law, " that exceptions in a deed and every uncertainty, are to be taken favorably to the grantee." *Jackson* v. *Gardner*, 8 Johnson's Reports, 406, and authorities there cited.

Again, "if the construction contended for would be senseless, and convey nothing, it will be rejected, and interpreted so as to give effect to the intentions of the parties, and pass what estate he had." Story on Contracts, 565, 567.

Now, it is manifest that Craft took nothing by virtue of the marriage, and, consequently, nothing would pass by his deed, if appellant's construction prevails.    But he does take something by

the will of Mrs. Craft, and, on this principle, *that* should pass by the deed.

With this view of the deed it shows a complete transfer of all his interest in his wife's personal estate, and consequently all right of distribution.    The deed, then, is as effectual a bar to the relief prayed for as a receipt in full, or a release of his distributive share in that estate, and these would be effectual for that purpose.

We, therefore, hold that the decree below was right, and should not be disturbed.

It is also right on another ground, to wit, on the ground of an estoppel *in pais*.  There are facts set up, in the answer of Germany, clearly showing the application of this doctrine.    When the authority to Germany, as guardian, to buy Craft's interest in the personal estate, as recited by Craft in his deed, together with the whole tenor of the deed, is considered, it can be safely said that Craft furnished Germany with good reason to believe that *all* the interest of Craft, in the estate of his wife, was transferred to his ward, John W. Laud.    Germany, with this inducement, paid Craft ten thousand dollars, the amount he was authorized to pay, by the order of court, for all the interest of Craft in the real and personal estate of his wife.    Here is a representation to Germany by which he is induced to part with his money, and on which he bases further action.    Germany, as executor, proceeds to make final settlement of the estate of Mrs. Craft, gives Craft the notice of such settlement required by law, and Craft appears not, makes no objections to the settlement, and sets up no claim to the property; thus, by his silence and non-claim, he passively, but knowingly, still further confirms the impression on Germany's mind that Craft has no interest.

On this conduct of Craft, Germany again acts by inventorying the whole estate of Mrs. Craft as the property of his ward, John W. Laud.

Germany thus incurs new obligations, as guardian, based upon the conduct of Craft.    Does it now comport with law or equity, for Craft to say that these acts of Germany were based on wrong conclusions, false impressions, erroneous views of facts, when he (Craft) induced these conclusions, and, by his false representations, made these false impressions, and produced the errors of which he seeks

to take advantage ?   It strikes me that no stronger facts could be adduced for the application of the doctrine of estoppel *in pais.* Authorities are abundant, but it will suffice only to cite 1 Greenleaf on Evidence, § 207; *Dickson* v. *Green,* 24 Miss. R. 616; *Nixon* v. *Carco,* 28 Ib. 430.

The decree, then, can well be sustained on this ground.

FISHER, J., delivered the opinion of the court.

This was a petition, filed in the Probate Court of Amite county, by the appellant, Thomas R. Craft, alleging that his wife, Elizabeth Craft, by her last will and testament, devised and bequeathed to the petitioner one-half of her real and personal estate; that the appellees, Germany and Dickson, were appointed executors of said will; that the same had been duly proven in the said court; that said executors had duly qualified under the said will, and had made their final settlement, without delivering to the petitioner the property to which he was, as such legatee, entitled.   The object of the petition was to compel payment of the said legacy.

The executors appeared and answered the petition, by setting up a purchase made by Germany, as guardian of one John W. Laud, a son of the testatrix by a former marriage; that this purchase was made under an order of said court, and was consummated by the deed of the petitioner, conveying his interest in the estate to the said Laud; and that, in virtue of said purchase and deed, the interest or portion of the petitioner in the said estate, had been delivered to the said Germany, as such guardian.

The orders of the court, authorizing the purchase, are made exhibits to the answer of the executors to the petition, and the important question for decision arises upon the construction of the deed.   It is insisted, on behalf of the petitioner, that the deed only conveys such interest as he acquired by virtue of his marriage with the testatrix, and not the interest which he takes as a legatee under the will.   The order of the court, authorizing the purchase, is incorporated into and made part of the deed; and it may, therefore, if necessary, be resorted to, for the purpose of arriving at the true intention of the parties.   The guardian is authorized to purchase all the interest, or supposed interest, of the petitioner in the estate of the testatrix.   No authority is given for the purchase of

a doubtful title, or anything less than the title which the petitioner had to the property. The deed, after conveying the land, contains this clause in regard to the personal estate, to wit : " Also all such interest, or supposed interest, as I, the said Thomas R. Craft, may have or claim, in and to the personal estate of the said Elizabeth R. Craft, either at law or in equity, present or future, which I, the said Thomas R. Craft, may have acquired by virtue of my inter-marriage with the said Elizabeth R., formerly Elizabeth Laud, the widow and relict of the said Nathan Laud, deceased."

The deed then concludes as follows : " To have and to hold the above-granted, bargained and described premises, lands, tenements, and personal estate, unto him, the said John W. Laud, his heirs and assigns, to all intents and purposes in the law, as fully and effectually as I am capable of selling and conveying away all my interest in and to the said real and personal estate." We think it clear, from the whole context of the deed, and the nature of the transaction, that the petitioner intended to convey his entire inte-rest, whatever it was, in the estate ; and, that such was the con-tract of the parties, will not admit of doubt. The purchase was made under an order of the court. The interest which the peti-tioner had, as a legatee, was certain, and something, of the value of which, the court could judge, and form a correct and definite opinion ; while, on the contrary, the petitioner's title, or interest, as hus-band, was not known to the court. The estate was, at that time, held jointly by the petitioner with the other legatee, for whose benefit the purchase was to be made ; and the advantage of pur-chasing the petitioner's interest, and thus severing the joint estate, was too apparent not to meet the sanction of the court. This order, being part of the deed, was notice to the petitioner of the authority of the guardian to purchase ; and the order extending to the whole interest, we must suppose that the parties contracted in regard to this interest, unless a different contract is clearly shown by the deed.

The deed, in our opinion, although in some respects ambiguous, nevertheless conveys the entire interest which the petitioner held, as a legatee, under the will. It, in conclusion, conveys all that he was, in law, capable of conveying, which means his whole interest,

whether arising under the will, or under the marriage of the petitioner with the testatrix.

Decree affirmed.